UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS D. WILSON CONSULTING, INC., ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> KEELY & SONS, INC., et al., ) <br> ) <br> Defendant(s). ) | Case No. 4:05CV02115-ERW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Keely & Sons, Inc., and Keller Construction, Inc.'s Motion for Summary Judgment [doc. #48], Defendants' Motion to Strike Affidavit of Thomas D. Wilson [doc. #55], Defendants' Motion to Strike Plaintiff's Supplement to the Summary Judgment Record [doc. #65], Defendants' Motion to Strike Plaintiff's Supplemental Response to Interrogatory Number 19 [doc. #72], and Plaintiff's Motion to Amend the Complaint by Interlineation [doc. #69].

## **I. BACKGROUND FACTS**[1]

Defendants are corporations that jointly contracted with Bi-State Development Agency ("Bi-State") to do work on the St. Clair County, Illinois extension of the Metro Link light rail system ("Metro Link"). In its First Amended Complaint, Plaintiff alleges that on or about September 28, 1998, Defendants entered into a contract with Plaintiff, under which Plaintiff agreed to provide consulting services for Defendants in connection with the preparation,

---

[1]The Court's recitation of the facts is taken from Plaintiff's Complaint, the parties statements of Uncontroverted Material Facts, and the evidence presented in the record.

1

documentation and presentation of monetary claims against Bi-State for additional time, claims and damages incurred by Defendants during the Metro Link Projects. According to Plaintiff, the consulting contract between Plaintiff and Defendants provided two alternate payment methods by which Plaintiff's payment would be determined. One method stated that Plaintiff's payment would equal twenty-five percent of the amount ultimately recovered by Defendants, the other stated that Plaintiff's payment would equal ten percent of the amount ultimately recovered by Defendants, plus a monthly payment at a reduced hourly rate. While all parties signed the consulting contract, it is not clear whether a method of payment was agreed upon. Plaintiff's First Amended Complaint asserts that the September 28, 2007 agreement is an enforceable contract, or alternately, that an oral contract was formed when Defendants' agent Jerry Hamman verbally accepted payment method two.

## II. PROCEDURAL HISTORY

On November 10, 2005, Plaintiff filed a Complaint against Defendants in two counts. Count I alleges breach of contract and Count II alleges quantum meruit. On January 13, 2006, Defendants filed an Answer to Count I of Plaintiff's Complaint, along with a Motion to Dismiss Count II for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants additionally filed a Counterclaim against Plaintiff alleging two causes of action. On April 17, 2006, this Court entered an order finding Plaintiff's Count II insufficient as a matter of law, but granted Plaintiff's Request for Leave to Amend Complaint [doc. # 29]. Plaintiff then filed its First Amended Complaint on May 1, 2006, again alleging breach of contract under Count I and quantum meruit under Count II [doc. # 32]. Defendants' Filed a Motion to Dismiss Count I only [doc. #34] which was denied as untimely. Defendants then filed a Motion for Summary Judgment as to Count I [doc. #48], as well as three Motions to Strike [docs. ##55, 65, 72]. Additionally,

Plaintiff's filed a Motion to Amend their Complaint [doc. #69]. The Court will address all five pending motions at this time.

### III. MOTIONS TO STRIKE

The Federal Rules provide that

> upon motion made by a party before responding to a pleading, or if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

Fed. R. Civ. P. 12(f). Defendants' motions require only a brief response, as Rule 12(f) by its terms, applies only to pleadings, not to motions for summary judgment, or the documents filed in support of a motion for summary judgment. *Burlington Northern Santa Fe Railway Corp. v. Dakota Missouri Valley and Western Railroad, Inc.*, 347 F.Supp.2d 708, 727 (Dist. S.D. 2004) ("Courts have consistently held that the various papers submitted in support of or in opposition to summary judgment motions are not pleadings as contemplated by Rule 12(f)."). A pleading is defined in the Federal Rules as "a complaint and an answer; a reply to a counterclaim. . .; an answer to a cross claim. . .; a third-party complaint. . .; and a third party answer. . .. No other pleading shall be allowed. . .." Fed. R. Civ. P. 7(a). As a District of Columbia court held, "[t]hus, by the plain terms. . .the rule cannot be used to strike an affidavit." *Aftergood v. central Intelligence Agency*, 355 F.Supp.2d 557, 564 (Dist. D.C. 2005).

Defendants seek to strike Plaintiff's affidavit filed in support of its Response in opposition to Defendants' Motion for Summary Judgment, as well as Plaintiff's supplemental response in opposition to Defendant's Motion for Summary Judgment, and Plaintiff's supplemental response to interrogatory number 19. As none of the documents Defendants seek to strike are pleadings, they fall outside of the scope of Rule 12(f) of the Federal Rules of Civil Procedure.

Rule 56 of the Federal Rules allows for either party to file a motion for summary judgment, and to file supporting affidavits "at any time after the expiration of 20 days from the commencement of the action . . .." Fed. R. Civ. P. 56(a). Rule 56 further states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The only limitation provided by the rule is that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Furthermore, "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." *Id.*

The Court concludes that all evidence submitted in support and opposition to Defendants' Motion for Summary Judgment shall be considered by the Court. To the extent that Defendants' argue such evidence is inadmissable, the Court will weigh the evidence accordingly. Motions to strike are not the proper means by which to challenge the admissibility of evidence in support of, or opposition to, a Motion for Summary Judgment. Defendants Motions to Strike are denied.

## IV. MOTION TO AMEND BY INTERLINEATION

Federal Rule of Civil Procedure 15 states:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . .. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 12(a). Plaintiff seeks leave of the Court to amend its Complaint, replacing the dollar amount of $594,904.85 with "in the amount of 25% of the amount ultimately recovered by the Joint Venture on claims." Defendants have not filed a response to Plaintiff's request. The

Court does not believe that Defendants will be prejudiced by the amendment requested, and therefore Plaintiff's request is granted.

## V. MOTION FOR SUMMARY JUDGMENT

The Court will now address Defendants' Motion for Summary Judgment [doc. #48].

### A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**B. DISCUSSION**

Plaintiff's complaint raises two distinct bases for enforcing an alleged contract entered into between Plaintiff and Defendants. The first basis is that the written agreement, signed September 28, 2007 ("the agreement"), is enforceable as signed, and therefore creates a binding obligation on Defendants. The second basis is that although the written agreement failed to specify a payment method, Defendants orally accepted payment method two, and therefore created an oral contract which is enforceable. Defendants respond that the written agreement is not enforceable due to the

6

lack of an essential term, namely price, and deny the existence of an enforceable oral agreement. Alternatively, Defendants argue that any oral agreement is unenforceable as it would violate the statute of frauds. The Court will address each of Defendants' arguments in turn.

### 1. CONFLICT OF LAWS

As an initial matter the Court notes that it is unclear whether Illinois or Missouri State law is applicable to the contract action at issue. Throughout their briefs, the parties cite alternatively to Illinois, and Missouri State law. Before this Court can rule on Defendants' summary judgment motion, a conflict analysis is required. The pending action is before the Court under this Court's diversity jurisdiction. In a diversity action, "[t]he district court must apply the choice-of-law rules of the forum state." *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Therefore, this Court looks to Missouri law to determine whether there is a conflict of laws, and if so, whether Missouri or Illinois state law applies.

"Under Missouri law, a conflict does not exist 'unless the interests of the two states cannot be reconciled.'" *Interstate Cleaning Corp.*, 325 F.3d at 1028 (quoting *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999)). If no conflict exists, then Missouri law is applied. *Interstate Cleaning Corp.*, 325 F.3d at 1028. Missouri and Illinois law have the same requirements for contract formation, and therefore the Court will look to Missouri law to determine whether a contract was formed. The same is true of the two states' statutes of frauds, therefore the Court will look to the Missouri Statute.

### 2. WRITTEN CONTRACT

The Court will first address whether a written contract existed based on the agreement. The agreement, signed by the parties, stated that Plaintiff would provide construction consulting

7

services in connection with the Bi-State Contracts. The agreement provided two payment options: option one provided for a reduced hourly rate plus a percentage of the settlement; option two provided for a pure contingent fee of 25% of any amount recovered by Defendants on their claims. Plaintiff argues that the second option was chosen, and that this is evident from the face of the document due to a notation next to the second option which states "Wilson's fee included in total cost."

There are five essential elements of contract formation under Missouri law: "(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 203 (Mo.Ct.App. 2006) (internal quotation omitted). The fourth element "requires the parties to have 'a mutuality of assent or a meeting of the minds to the essential terms of a contract.'" *Id.* (quoting *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo.Ct.App. 2003)). "[B]efore a court can even begin considering interpreting a contractual agreement, it must first determine whether the agreement constitutes a complete, enforceable contract." *Olathe Millwork Co.*, 189 S.W.3d at 203. Missouri law is clear that a contract does not have to contain all terms in order to be binding upon the parties, but rather only the material terms. *See e.g. Ketcherside*, 118 S.W.3d at 636 ("Essential terms of a contract must be certain. . . ."). An agreement cannot be enforced if it is not sufficiently definite. *Ogilvie v. Ogilvie*, 487 S.W.2d 40, 41 (Mo.Ct.App. 1972) ("It is fundamental law that for an agreement to be binding it must be definite and certain."). "That is, the terms of the agreement must be sufficiently definite to enable a court to give it an exact meaning." *Building Erection Services Co. v. Plastic Sales & Manufacturing Co., Inc.*, 163 S.W.3d 472, 477 (Mo.Ct.App. 2005) (internal quotation and alterations omitted). "In determining whether the terms of an agreement are too uncertain to create an enforceable

contract, a court is guided by principles of law applied with common sense and in light of experience." *Id.* at 203-204. One principle of law that is recognized in Missouri, "is that a contract must include a definite price to be binding." *Id.*; *see also Juengel Construction Co., Inc. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 514 (Mo.Ct.App. 1981).

The parties in the case at bar had not reached an agreement as to price. Although they had narrowed the potential compensation to two alternatives, this is not sufficiently definite for the Court to enforce the agreement. Furthermore, the notation on the face of the contract next to the second payment option, "Wilson fee's included in total cost[,]" does not clearly state the intent of the parties. *See Pl. Compl.*, Ex. 3, p. 2. The notation could be intended to indicate Defendants' acceptance of that payment method, as asserted by Plaintiff, however, it also could be an explanation of that method in order to facilitate Defendants' decision making process. Furthermore, the bottom of the contract provides a specific location for Defendants to accept method one or method two, neither option is chosen. "Whether a contract is made and if so, what the terms of that contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.Ct.App. 1994). Thomas Wilson testified in his affidavit that he understood the notation next to method two to mean that Defendants were accepting that payment method. However, the understanding of one of the parties is insufficient, that notation does not objectively indicate the parties intent.

The Court concludes that the agreement is not sufficiently definite, as price is an essential term that was not specified in the written document. This Court cannot enforce a document which is ambiguous as to the essential term of price. There is no genuine issue of material fact to be determined by a jury, as to the enforceability of the written agreement, however, the Court

9

must determine whether there is a genuine issue of material fact as to Plaintiff's contention that there was an oral contract.

### 3. ORAL CONTRACT

The Court next addresses Plaintiff's assertion that an oral agreement was entered into, and the oral contract is enforceable. Defendants raise two arguments against this contention: first, Defendants argue that there is insufficient evidence to create a genuine issue of material fact on the formation of an oral contract; secondly, that any oral contract entered into is unenforceable as it violates the statute of frauds.

#### a. Sufficiency of Evidence

Defendants assert that Plaintiff has provided insufficient evidence to support a finding that the parties entered into an oral contract for Plaintiff's consulting services. Specifically, Defendants argue that the only evidence presented by Plaintiff is the self-serving affidavit of Thomas Wilson, and therefore the evidence is insufficient to support a jury verdict. Plaintiff responds that Thomas Wilson's affidavit is admissible evidence, and furthermore the affidavit is not the only evidence presented in support of an oral contract.

In order make a submissible case, Plaintiff must present "substantial evidence to support every fact essential to liability." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.Ct.App. 1994). In *Wallace v. Snider*, the Missouri Court of Appeals held that testimony by the Defendant to an oral agreement and its terms "was substantial evidence[,]" sufficient to support the trial court's finding. 204 S.W.3d 299, 304 (2006). There is clearly no rule against enforcement of an oral contract, where there is evidence of the terms. *Id.*

Defendants are correct that, at the time the agreement was signed there was no contract, as there was no agreement on payment, however, this does not preclude Plaintiff from providing

evidence that at a later point an agreement was reached. Plaintiff has presented evidence of an oral agreement that was entered into between Thomas Wilson, of Plaintiff Company, and Jerry Hamann, of Defendant Keller Construction Inc.[2] Plaintiff has also provided the affidavit of Robert Naumann, an employee of Naumann Construction Services, a company which served as a sub-consultant for Plaintiff, in support of their position that an oral contract was reached. Mr. Naumann testified to a statement made by Jerry Hamann that the 25% contingency fee method had been accepted. *Pl. Mot. To Supplement Summ. Judg. Record*, Ex. 2, ¶11. Mr. Naumann further testified that he was instructed that certain entries on Naumann's invoices that were submitted to Defendants needed to be deducted as they constituted claim work, and therefore

---

[2]Defendants argue that this testimony is inadmissible as hearsay, and further that it is inadmissible under the Illinois' Dead Man's statute. Plaintiff responds that it falls under an exception to the hearsay rule, as an admission against interest of a party that is now unavailable. Fed. R. Evid. 804(b)(3) ("Statement against interest."). Rule 804(b)(3) states:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability. . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed. R. Evid. 804(b)(3). The statements of Jerry Hamann referenced in Plaintiff's answer to Interrogatory No. 19 submitted to this Court, do not fall within the Statement Against Interest exception. At the time the statements were made, they were not against Jerry Hamman's pecuniary or proprietary interests, but were merely statements made in furtherance of obtaining consulting services. The rule specifically requires that it be against the declarant's interest "at the time of its making." *Id.* It is only now that the statements are against Defendants' interests.

However, these statements are admissible as a statement of a party opponent. Fed. R. Evid. 801(d)(2) ("A statement is not hearsay if-. . . (2) The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity. . . ."). Mr. Hamann is a representative of Defendant Keller Construction, Inc., and therefore, his statements are admissible. Under Rule 801, the availability of the witness is immaterial, as statements of a party opponent are not exceptions to the admissibility of hearsay, but rather are not hearsay. *Id.* This negates any need by this Court to address the applicability of the Illinois or Missouri Dead Man statutes.

11

were not to be billed. *Pl. Mot. To Supplement Summ. Judg. Record*, Ex. 2, ¶¶16-18. This supports Plaintiff's assertion that the contingency fee option was to be the method of payment.

The Jury is entitled to believe the evidence testified to by Plaintiff, that an oral agreement was reached amongst the parties, therefore Summary Judgment on the existence of an oral contract under Count I is denied.

### b. Statute of Frauds

The Defendants next argue that even if Plaintiff can present evidence of an oral contract sufficient to support a jury finding in their favor, such a contract would be unenforceable under the Statute of Frauds. Defendants' assert that the contract, was not to be performed within one year and is therefore under the Statute of Frauds must be in writing. Plaintiff responds that the contract could be performed within one year, and whether it was or not is immaterial.[3] The question to be decided by the Court is whether the agreement to perform consulting services was one that could be performed within one year.

Under Missouri Law[4] "[n]o action shall be brought. . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . .." Mo.Rev.Stat. § 432.010. A contract is outside the statute of frauds if it is capable of being performed within one year. *See e.g Satterfield v. Missouri Dental Association*, 642 S.W.2d 110, 112 (Mo.Ct.App. 1982) ("[A]n employment

---

[3]Plaintiff alternately argues that Plaintiff's performance of the contract takes it outside of the statute of frauds. As the Court finds the contract was capable of being performed within one year, it is not necessary to address this argument.

[4]As stated above, where there is no conflict in the law of two states, the law of the forum state is applicable. Both Missouri's and Illinois' Statute of Limitations provide that an agreement not able to be performed within one year must be in writing. *See* 740 ILCS 80/1.

contract for an indefinite period may be performed within one year by exercise of the option to terminate and such an agreement has been held not to be within the statute of frauds."). "Missouri, follows the familiar rule that any contract that can hypothetically be performed within a year is without the statute, no matter how fanciful the possibility of performance may be." *Visiting Nurse Association, St. Louis v. NVAHealthcare, Inc.*, 347 F.3d 1052, 1055 (8th Cir. 2003); *see also Crabb v. Mid-American Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. 1087) ("Our cases hold, consistently, that a contract is not unenforceable under the statute of frauds if it could possibly be performed in compliance with its terms within one year, even though the actual performance is expected to continue over a much longer period.")

Plaintiff has gone to great lengths to explain how the contract at issue in this case could have been performed within one year. Specifically, Plaintiff asserts that because the underlying contracts, the agreement between Defendants and Bi-State, could have been performed within one year, the contract at issue in this suit could also be performed within one year. Defendants also reference the underlying contract, but as evidence that the consulting contract could not be performed within one year.

The contract at issue in this case is a consulting contract. Plaintiff was to provide consulting services to Defendants on Defendants' two existing contracts with Bi-State. The contracts between Defendants and Bi-State consisted of two separate contracts, both involving the Metro Link extension in St. Clair County, Illinois. The two underlying contracts were entered into in February, 1998, and May, 1998. Both contracts contained a completion date of November 24, 1999, however, the contracts also allowed for early completion of the work. Assuming that

13

the contract formation date was September 28, 1999,[5] it was possible that the underlying contracts could be completed prior to that date.

Both parties agree that the time period for completion of the agreement at issue is tied to the underlying contracts between Bi-State and Defendants. Plaintiff has provided two letters sent to Bi-State by Defendants, which state an earlier completion date than that of the original agreement, as evidence that the oral contract was able to be performed in less than one year. Defendants argue these letters are irrelevant as the statute of frauds determination is to be made as of the time the contract was formed, and these letters were sent after the oral agreement. The Court agrees with Defendants that the appropriate time to analyze whether performance was hypothetically possible is at the time of formation, however, the letters serve to support Plaintiff's position that performance was hypothetically possible. The existence of a final completion deadline in the underlying agreements, outside the year window, does not negate the possibility of performance within one year. Unless an oral contract specifically requires performance for longer than one year, the likelihood of performance in less than one year is irrelevant. *Crabb*, 735 S.W.2d at 716 ("Thus an oral contract to work for a person for two years would violate the statute, but a parol undertaking to hire a man 30 years old for the rest of his life would not."). The contract entered into between Plaintiff and Defendants did not require any action by Plaintiff at a date later than one year from the contract date. The letters, coupled with the language in the

---

[5]This is the date used by Plaintiff in their responsive brief, and represents the date that the agreement was signed. However, as this Court previously stated, the written agreement was insufficient to constitute a contract as it lacked an essential term. The actual contract formation date was the date that Defendants orally accepted the second payment method outlined in the written agreement. That date, if an oral contract is proven, was at some point after September 28, 1998. However, for purposes of this Court's statute of frauds discussion, the exact date does not effect the outcome of the analysis and therefore the Court will use the September 28, 1988 date for the sake of simplicity.

14

two underlying contracts that allowed for early completion, support this Court's conclusion. Plaintiff's obligation to perform consulting services could have been performed within one year. The Court is not concerned with the likelihood of performance within one year, only whether it was possible. Defendants' motion for summary judgment on the basis that the oral contract is barred by the statute of frauds is denied.

## VI.  CONCLUSION

The Court concludes that there is sufficient evidence to support a jury verdict in favor of Plaintiff under Count I of the Complaint. Defendants are correct that no written contract was entered into between the parties, however, Plaintiff has provided evidence of an oral contract. Defendants' assertion that an oral contract violates the statute of frauds is unpersuasive. Although the parties may have contemplated that performance would take longer than one year, the contract was nonetheless capable of being performed within one year, removing the contract from the statute. Therefore Defendants' motion for Summary Judgment as to Count I is denied. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to Count I of Plaintiff's First Amended Complaint [doc. #48] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Affidavit of Thomas D. Wilson [doc. #55], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Supplement to the Summary Judgment Record [doc. #65] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend the Complaint by Interlineation [doc. #69] is **GRANTED**. Plaintiff shall submit a Second Amended Complaint by June 25, 2007.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Supplemental Response to Interrogatory Number 19 [doc. #72] is **DENIED**.

Dated this 18th Day of June, 2007.

                                               E. RICHARD WEBBER
                                               UNITED STATES DISTRICT JUDGE